PONDER, Judge.
Plaintiff appealed from a judgment in her favor against defendant American International Insurance Company (A.I.U. Ins. Co.) that limited the uninsured motorist coverage to $5,000.00.
The sole issue is the limit of plaintiff’s uninsured motorist coverage.
We affirm.
Mrs. Roberts was injured as the resqlt of the negligence of an uninsured motorist. The court, in consolidated trials, awarded plaintiff damages in the amount of $14,-943.39 against the tortfeasor and plaintiff’s uninsured motorist carrier, A.I.U. Ins. Co., but limited A.I.U. Ins. Co.’s liability to $5,000.00. The policy had been originally issued to plaintiff with $5,000/$10,000 uninsured motorist limits. The coverage was automatically raised to $25,000/$50,000 by Act 154 of 1974 which imposed uninsured motorist coverage in an amount not less than bodily injury liability coverage. In December, 1975, plaintiff requested the uninsured motorist coverage be dropped. By oral request in January, 1976, plaintiff asked for reinstatement of the uninsured motorist coverage at limits of $5,000/$10,-000. From that time, plaintiff paid premiums on the policy at six month intervals reflecting $25,000/$50,000 liability limits and $5,000/$10,000 uninsured motorist limits. The policy in effect at the time of the accident, which occurred July 13, 1978 had been last renewed on May 2, 1978.
Plaintiff claims that because she did not consent in writing to a lesser limit, she is entitled to uninsured motorist coverage equal in amount to her bodily injury liability coverage of $25,000. LSA-R.S. 22:1406 (D)(1)(a),[1] a part of the uninsured motorist *377 statute, was amended in 1977 to require a rejection of uninsured motorist coverage or selection of lower limits be in writing. We do not believe that requirement to be retroactive, cf. Pierce v. Hartford Accident and Indemnity Co., 184 So.2d 241 (La.App. 1st Cir. 1966), writ denied 249 La. 201, 186 So.2d 160. Plaintiff argues, however, that LSA-R.S. 22:628[2] required the selection of lesser limits of uninsured motorist coverage be written to be effective.
Plaintiff cites Walker v. Coleman, 367 So.2d 395 (La.App. 2d Cir. 1979), writ denied La., 369 So.2d 1365, and LeBoyd v. Louisiana Transit Co., et al., 375 So.2d 749 (La.App. 4th Cir. 1979). The first decision could have rested on the insufficiency of proof of absence of a genuine issue of a material fact in a summary judgment proceeding. However, the court did say that because of strong public policy, proof of a waiver of such statutorily mandated coverage must be in writing to be effective, under the provisions of La.R.S. 22:628, even though the latter were not directly on point.
At any rate in Turner v. Allstate Ins. Co., 368 So.2d 797 (La.App. 2d Cir. 1979), the same circuit held that a policy effective on June 17, 1976, did not require a new rejection or selection document attached to the policy under the terms of LSA-R.S. 22:1406 (D)(1)(a) as amended by Act 494 of 1975, if there had been a rejection or selection of lower limits. The court reasoned that the general provisions of LSA-R.S. 22:628 would yield to the special provisions of LSA-R.S. 22:1406 (D)(1)(a).
In LeBoyd v. Louisiana Transit Co., supra, the policy effective December 21, 1974 to December 21, 1975, issued prior to the effective date of Act 494 of 1975, September 12, 1975, contained no provision for uninsured motorist coverage. The parties stipulated that there had been an oral rejection. The court, reasoning that the requirement of uninsured motorist coverage was mandatory, held that the public policy considerations behind LSA-R.S. 22:628 required a rejection of such required coverage to be in writing. The provision of Act 494 of 1975 to the effect that “[S]uch coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer,” was found inapplicable because the policy had been issued prior to the effective date of the act. We therefore find LeBoyd also to be inapplicable.
Under the uninsured motorist statute, plaintiff’s uninsured motorist coverage was automatically raised to the liability of his policy. Plaintiff then rejected all uninsured motorist coverage. The following month, plaintiff specifically selected a lower coverage than imposed by law. He reaffirmed that selection at six-month intervals for the next three years.
*378 In each instance the lower limits was evidenced by entries on the declarations page, which was in writing and attached to the policy, thus complying with the provisions of LSA-R.S. 22:628, which was the only statute then existing requiring written evidence.
We hold the policy considerations behind LSA-R.S. 22:628, the general statute, do not require the invalidation of such an oral modification of the uninsured motorist contract effective prior to the 1977 amendment to LSA-R.S. 22:1406 (D), the special statute, where the insured is aware of the options afforded to him by law and he specifically chooses a lower coverage. Cf. Breaux v. Government Employees Insurance Company, 373 So.2d 1335 (La.App. 1st Cir. 1979). The legislature did enact the statute requiring the election to be in writing. The position urged would convert this legislation into a vain and unnecessary thing.
For the above reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.
EDWARDS, J., dissents and will assign reasons.

. LSA-R.S. 22:1406 (D)(1)(a):
“D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(l)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; pro *377 vided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.”

. At the effective date of plaintiffs policy on June 2, 1978, LSA-R.S. 22:628 read:
“No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.”