404 So.2d 948 (1981)
A.I.U. INSURANCE COMPANY
v.
F. J. ROBERTS, Jr., et ux.
F. J. ROBERTS, Jr., et ux.
v.
Neil B. BURRIS, et al.
No. 81-C-1001.
Supreme Court of Louisiana.
September 28, 1981.
*949 Stephen K. Peters, Baton Rouge, for defendant-applicant.
James E. Moore, of Franklin, Moore & Walsh, J. Byron Stringer, Baton Rouge, for plaintiff-respondent.
MARCUS, Justice.
F. J. Roberts, Jr. and his wife, Margaret B. Roberts filed suit against Neil B. Burris and his employer, Pat's Furniture Showroom of New Orleans, Inc., seeking damages sustained by them as a result of an accident on July 13, 1978 between an automobile driven by Mrs. Roberts and owned by her husband and an automobile driven by Burris allegedly in the course and scope of his employment. American International Insurance Company (A.I.U.), plaintiffs' uninsured motorist carrier, was added as a party defendant by an amended and supplemental petition. It was alleged that Burris was uninsured at the time of the accident. A.I.U. answered generally denying the allegations of plaintiffs' petition and amended petition and third partied Burris seeking indemnity for any amounts paid by A.I.U. to plaintiffs. Plaintiffs' demands against Pat's Furniture Showroom were dismissed in a summary judgment.
Subsequently, A.I.U. filed a petition for declaratory judgment against Mr. and Mrs. Roberts seeking to limit its uninsured motorist coverage to $5,000. Upon motion of A.I.U., the two suits were consolidated for trial.
After trial on the merits, the judge, finding the accident was caused solely by the negligence of Burris, rendered judgment in favor of Mr. Roberts and against Burris for $1,825 for property damage and $943.39 for medical expenses and in favor of Mrs. Roberts and against Burris and A.I.U. for $14,000. The liability of A.I.U. was limited to $5,000. Judgment was rendered on the third party demand in favor of A.I.U. and against Burris for $5,000. All awards included legal interest from date of judicial demand until paid and costs. In a separate judgment, the liability of A.I.U. was limited to $5,000 under the uninsured motorist coverage applicable to Mrs. Roberts. Mrs. Roberts appealed from both judgments. The only issue on appeal was the limitation of A.I.U.'s liability to $5,000. The court of appeal affirmed the judgments of the district court.[1] Upon application of Mrs. Roberts, we granted certiorari to review the correctness of that decision.[2]
The sole issue presented for our resolution is whether the liability of A.I.U. should be limited to $5,000 under the uninsured motorist coverage[3] applicable to Mrs. Roberts.
Under Louisiana law, uninsured motorist coverage is provided for by statute and embodies a strong public policy. Therefore, the question of uninsured motorist coverage must be determined in light of La.R.S. 22:1406. This statute has been amended several times with regard to the right to reject coverage or to select lower limits and the form and effect of such rejection or selection.
By Act 137 of 1972,[4] effective January 1, 1973, the legislature mandated that all *950 automobile liability insurance policies delivered or issued for delivery in this state provide uninsured motorist coverage in not less than the limits described in the Motor Vehicle Safety Responsibility Law unless "any insured named in the policy shall reject the coverage." The statute did not specify the method to be used in rejecting coverage.
The extent of coverage was further provided for in Act 154 of 1974,[5] effective July 31, 1974. This statute required uninsured motorist coverage in not less than the limits of bodily injury liability provided by the policy. Such coverage, however, was not required "where any insured named in the policy shall reject the coverage or select lower limits." Once again, the statute remained silent as to the mode by which coverage was rejected or lower limits were selected.
Act 494 of 1975,[6] effective September 12, 1975, appeared to create some confusion in the law. The same coverage provisions were retained but such coverage was not required to be "provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer." Thus, once a valid rejection of coverage or selection of lower limits was made, such rejection or selection was applicable to subsequent renewals. Some confusion may have been created when this version of the statute was mistakenly read as requiring a written rejection or selection. Landry v. Government Employees Insurance Co., 390 So.2d 1385 (La.App.3d Cir. 1980); Myers v. Thibeaux, 365 So.2d 266 (La.App.3d Cir. 1978).
Act 438 of 1977,[7] effective September 9, 1977, attempted to clarify the law with *951 respect to the form of rejection or selection of lower limits. Uninsured motorist coverage as previously mandated was required unless the insured "shall reject in writing the coverage or selects lower limits." Furthermore, the rejection of such coverage or selection of lower limits was presumed to be a part of the policy "irrespective of whether physically attached thereto." Thus, for the first time, the statute contained a requirement that rejection of coverage or selection of lower limits be in writing.
In the instant case, A.I.U. originally issued an automobile liability insurance policy to Mr. Roberts on June 6, 1974, with bodily injury liability coverage of $25,000 per person and uninsured motorist coverage of $5,000 per person. On July 31, 1974, the uninsured motorist coverage was increased to the same limits as the bodily injury liability coverage by operation of Act 154 of 1974. uninsured motorist coverage was dropped as per oral request of Mr. Roberts in December of 1974. In January of 1975, Mr. Roberts orally requested that the uninsured motorist coverage be reinstated in the amount of $5,000 per person. Mr. Roberts continuously renewed the policy at six-month intervals until the accident of July 13, 1978.
A.I.U. contends that at the time of Mr. Roberts' selection of $5,000 uninsured motorist coverage in January of 1975, the law did not require that rejection of coverage or selection of lower limits be in writing. A.I.U. argues that the oral request for lower limits constituted a valid selection and was applicable to subsequent renewals. Thus, when the policy in effect on the date of the accident was last renewed on June 6, 1978, the lower limits originally selected by Mr. Roberts automatically applied. We do not agree.
Uninsured motorist coverage is to be determined not only by the provisions of the contract but also by applicable statutes. In the absence of a specific rule, general insurance law controls. While it is true that prior to 1977, La.R.S. 22:1406 did not require selection of lower limits to be in writing, La.R.S. 22:628 then provided:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.
In determining the applicability of La.R.S. 22:628, the provisions of La.R.S. 22:1406 must be examined more closely. La.R.S. 22:1406 mandates the inclusion of uninsured motorist coverage in any automobile liability policy delivered or issued for delivery in this state. Coverage is required in limits not less than the limits of bodily injury liability provided in the policy unless the insured selects lower limits. It is of no moment that the policy in the instant case provided lower limits since the coverage was read into the policy by the terms of the statute. Since selection of lower limits conflicted with the coverage written into the policy law, such selection was required to be *952 in writing and attached to the policy. The oral waiver of uninsured motorist coverage was therefore invalid as being in contravention of La.R.S. 22:628 notwithstanding the fact that the version of La.R.S. 22:1406 in effect at the time did not contain a writing requirement. Ewing v. Sanson, 394 So.2d 849 (La.App.3d Cir. 1981); Landry v. Government Employees Insurance Co., supra; LeBoyd v. Louisiana Transit Co., 375 So.2d 749 (La.App. 4th Cir. 1979); Walker v. Coleman, 367 So.2d 395 (La.App.2d Cir. 1979), writ denied, 369 So.2d 1365. Clearly, prior to September 9, 1977, the effective date of Act 438 of 1977, any selection of lower limits, to be valid, had to be in writing and attached to the policy.
In the instant case, there was never a written selection of lower limits. Thus, Mr. Roberts' oral request for lower limits in January 1975 was ineffective and not applicable to subsequent renewals. Accordingly, plaintiff is entitled to uninsured motorist coverage in an amount not less than the limits of bodily injury liability of $25,000 provided in the policy. The courts below erred in limiting A.I.U.'s liability to $5,000. We must reverse.
In the alternative, plaintiff contends that under the authority of La.R.S. 22:1406(D)(1)(c), she is entitled to stacked coverage of $10,000 over the primary coverage awarded. Since we find that plaintiff is entitled to $25,000 uninsured motorist coverage under the A.I.U. policy, we do not reach this issue.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it limits the liability of American International Insurance Company to $5,000 and amended to permit third party plaintiff, American International Insurance Company, to recover against Neil B. Burris all sums paid by said third party plaintiff to Margaret B. Roberts; otherwise, it is affirmed in all other respects.
NOTES
[1] 395 So.2d 375 (La.App. 1st Cir. 1981).
[2] 399 So.2d 620 (La.1981).
[3] Reference to "uninsured motorist coverage" in this opinion should be deemed to read: "uninsured or underinsured motorist coverage."
[4] Act 137 of 1972 amended and reenacted La. R.S. 22:1406(D)(1) to provide:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.
[5] Act 154 of 1974 amended and reenacted La. R.S. 22:1406(D)(1) to read as follows:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits.
[6] Act 494 of 1975 amended and reenacted La. R.S. 22:1406(D) to read as follows:

The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.
[7] Act 438 of 1977 amended and reenacted La. R.S. 22:1406(D)(1)(a) to read as follows:

The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.