407 So.2d 503 (1981)
Barbara P. JORDAN
v.
Luther A. HONEA, et al.
No. 14,401.
Court of Appeal of Louisiana, First Circuit.
November 23, 1981.
Writ Denied January 18, 1982.
Robert L. Kleinpeter, Baton Rouge, for plaintiff-appellant Barbara Jordan.
Horace C. Lane, Baton Rouge, for defendant-appellee State Farm Mut. Ins.
Donald O. Collins, New Orleans, for defendant-appellee Browning-Ferris Industries, Inc.
Sheila Moore Gordon, Baton Rouge, for defendant-appellee State of La., Dept. of Health & Human Resources.
Paul H. Spaht, Baton Rouge, for defendant-appellee Continental Cas. Co.
H. S. H. Verlander, New Orleans, for defendants-appellees Walbrook Ins. Co., Ltd., "Winterthur" Swiss Ins. Co., et al.
Before COVINGTON, PONDER and WATKINS, JJ.
WATKINS, Judge.
This is an action for personal injuries sustained by Barbara P. Jordan while a passenger in an automobile driven by Charles A. Bearden and owned by Browning-Ferris Industries, Inc. That automobile was struck by a truck driven by Luther A. Honea, who was uninsured. Plaintiff alleges and all parties except Honea concede that the accident occurred at approximately 1:30 a. m. on January 1, 1977, on U. S. Highway 61, in West Feliciana Parish.
As a result of the accident, Barbara P. Jordan is alleged to have sustained serious injuries to her head, body and limbs, totally incapacitating her for the rest of her life.
Browning-Ferris had obtained a certificate of self-insurance from the Financial Responsibility Division of the Louisiana Department *504 of Public Safety. Also, Browning-Ferris held a policy of automobile liability insurance issued by Continental National American Insurance Company (actually the Continental Casualty Company of this group) to the extent of $500,000, above retained limits of $100,000. Above $500,000 Browning-Ferris held a policy of automobile liability insurance with Combined Insurance Companies (which bore an unspecified connection with Lloyd's) to the extent of $5,000,000. Also, Barbara P. Jordan held a policy of automobile liability insurance from State Farm Mutual Insurance Company with limits not stated in the pleadings.
In her petition, as amended (Third Supplemental and Amending Petition), plaintiff seeks $2,000,075.00 in damages. Named as defendants in the suit are Honea, CNA (Continental), State Farm, Browning-Ferris, and Underwriters of Lloyd's (Combined Insurance Companies). Honea never filed an answer. All of the other defendants denied liability.
The appeal comes from the granting of a summary judgment sought by CNA, Combined Companies, and Browning-Ferris dismissing them as parties defendant on the ground that uninsured motorist coverage did not exist. We affirm the judgment of the trial court insofar as it dismisses Browning-Ferris, but hold that CNA and Combined Companies should not have been discharged.

LIABILITY OF BROWNING-FERRIS INDUSTRIES, INC.
Plaintiff contends that Browning-Ferris, as a certified self-insured, afforded uninsured motorist coverage by virtue of its qualification as a self-insured. We hold, after having considered the applicable statutes, that a certified self-insured does not afford uninsured motorist coverage. Under the terms of LSA-R.S. 22:1406(D) (which, as we shall explain in the discussion of the liability of CNA and Combined Companies, has been amended with respect to the form required to effect a rejection of UM coverage), UM coverage is afforded by an automobile liability insurer unless that coverage is rejected in proper form. The version of LSA-R.S. 22:1406(D) that was in effect on January 1, 1977, was that version enacted by Louisiana Act No. 494 of 1975, which reads as follows:
"The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer."
The statute, it will be noted, used the words "delivered or issued" in its requirement that there be UM coverage unless properly rejected. Obviously in using that language, the statute contemplates that there be a policy of insurance, as self-insurance can neither be "delivered" nor "issued" but rather, simply, exists apart from any issuance or delivery. Thus, it was not intended by the legislature that self-insurance should entail UM coverage.
The mere obtaining of a certificate of self-insurance should not cause a change in the requirement that there be a policy of *505 insurance in order for there to be UM coverage. The statute which provides for self-insured status is LSA-R.S. 32:1042, which reads in pertinent part as follows:
"A. Any person in whose name more than twenty-five motor vehicles are registered or who owns property in Louisiana assessed in his name having a value of fifteen thousand dollars or more after deducting any encumbrances thereon from its assessed valuation may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in Subsection B of this Section.
B. The commissioner may, at his discretion, upon the application of such a person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person."
This statute provides one of the methods for establishing proof of financial responsibility under the Louisiana Safety Responsibility Law in lieu of a Motor Vehicle Liability Policy as defined by LSA-R.S. 32:900, which, simply stated, is an automobile liability insurance policy. The statute does not provide that self-insured status carries with it as a matter of statutory law or public policy the automatic conferring of UM coverage, as we find that there must be an insurance policy for there to be the requirement of UM coverage, unless rejected.
Were we to hold that the UM coverage requirements of LSA-R.S. 22:1406(D) are applicable to a self-insured, the UM rejection provision of the statute would become impracticable for the reason that there is no person, office, agency, or other legal entity provided for by statute to whom rejection could be communicated. Thus, if we were to accept plaintiff's position, UM coverage would become mandatory and thereby even broader if there were self-insurance than if there were a basic automobile liability insurance policy. Such an anomalous result could not have been intended by the legislature.
There are no reported cases in this state that deal with the question of UM coverage by a self-insured. However, the problem was considered by the Supreme Court of Pennsylvania in Johnson v. Yellow Cab Co., 456 Pa. 256, 317 A.2d 245 (1974). The Pennsylvania statute requiring UM coverage, unlike Louisiana, used the word "policy". However, as we have seen, the use of the words "delivered or issued" in the Louisiana statute clearly indicates that an insurance policy is contemplated. The following language in Johnson reaffirms our reasoning:
"The Uninsured Motorist Act provides that `No motor vehicle liability policy of insurance ... shall be delivered or issued for delivery in this State ... unless coverage is provided therein ...' for the protection of persons against uninsured motorists. It further provides that a motor carrier under the jurisdiction of the Public Utility Commission, such as Yellow Cab, `... shall have the right to reject such coverage in writing ....' Act of August 14, 1963, P.L. 909, § 1, as amended, 40 P.S. § 2000 (emphasis added). The appellants have alleged that the appellee is self-insured but they have not alleged the existence of any liability policy of insurance. This precludes any cause of action under the Uninsured Motorist Liability Act since that Act applies only when a liability policy of insurance is delivered or issued for delivery. If no liability policy of insurance exists, that Act, does not apply. One who is self-insured does not have a liability policy of insurance. Such a policy is a contact involving at least two partiesan insurer and an insured. The allegation that the appellee is self-insured negates any possible inference that a liability policy of insurance exists.
* * * * * *
The appellants have suggested that the appellee, a self-insurer, should have sent a rejection of uninsured motorist coverage to the Commonwealth of Pennsylvania. None of the agencies of the Commonwealth of Pennsylvania, however, have ever offered a liability policy of *506 insurance to the appellee. The Public Utility Commission of Pennsylvania issued a certificate which permitted the appellee to be a self-insurer. The issuance of that certificate, however, was not the delivery or the issuance for delivery of a liability policy of insurance."
If we were to hold that as a matter of public policy UM coverage should be afforded by a self-insured, as was done in a South Carolina case, Southern Home Insurance Co. v. Burdette's Leasing Service, Inc., 268 S.C. 472, 234 S.E.2d 870 (1977), we would in our view be usurping a function more properly reserved to the legislature. The statutory laws of our state afford no ground upon which to find that UM coverage would automatically be conferred for the protection of the general public by a self-insured. Indeed, they indicate that UM coverage is required only if there is an insurance policy which is "delivered or issued". Hence, we find that Browning-Ferris was properly discharged by summary judgment, as it did not afford UM coverage.

LIABILITY OF CNA AND COMBINED COMPANIES
CNA (Continental Casualty Company) issued a liability insurance policy to Browning-Ferris Industries, Inc. for the period September 30, 1976, to September 30, 1977. This policy afforded coverage for Comprehensive Automobile Liability Insurance and Protection against Uninsured Motorists Insurance in addition to other coverages. The policy issued to Browning-Ferris by Combined Companies (Lloyd's) was effective from December 14, 1975, through September 30, 1978. Both policies covered the national (U.S.A.) and worldwide operations of Browning-Ferris.
Both CNA and Combined Companies contend UM coverage in Louisiana was rejected by Browning-Ferris. They argue that under the provisions of LSA-R.S. 22:1406(D) as it stood on January 1, 1977 rejection of UM coverage by the insured was not required to be in writing. They argue further that even if a written rejection was required, Browning-Ferris complied by rejecting UM coverage on its Insurance Proposal submitted to CNA prior to the issuance of the CNA policy. The Insurance Proposal set forth the specifications of coverage required by Browning-Ferris and contained the following language:
"Uninsured Motorist and Personal Injury Protection (No Fault) required by law otherwise rejected."
The Insurance Proposal document filed in evidence is contained in what appears to be a report of the Risk Management Department of Browning-Ferris to its Board of Directors or top management, and we note that the coverage in several respects of the CNA policy does not conform with the specifications in the proposal, but since the proposal was not attached to either the CNA or the Combined Companies policy there is no need to consider the effect of this UM rejection for reasons which we will express later.
In support of the contention that Browning-Ferris orally rejected UM coverage, CNA and Combined Companies filed in evidence the affidavits of Ed Ludwig, Regional Director for the Southern Region, National Accounts, CNA; of Quill Healy, president of the insurance brokerage firm that obtained the policy for Browning-Ferris from CNA; and C. P. J. Mooney, III, Insurance Manager for Browning-Ferris, which state that Browning-Ferris indicated it did not desire UM coverage in any state where the law did not make the coverage mandatory. To the same effect is the deposition of John A. Lindquist, Director of Risk Management and Loss Control for Browning-Ferris.
It does appear from the affidavits and deposition that Browning-Ferris did not want to have UM coverage in Louisiana since our law permitted the company to reject the coverage.
However, the expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law. Under Louisiana law, uninsured motorist coverage is provided for by statute and embodies a strong public policy.
*507 We have quoted LSA-R.S. 22:1406(D) as it stood on January 1, 1977, before it was amended by Act No. 438 of 1977, which took effect September 9, 1977. The 1977 Act amended R.S. 22:1406(D)(1)(a) to read as follows:
"The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
Also, pertinent to our decision is LSA-R.S. 22:628, which is the general statutory provision regulating amendment of policy coverage and which, in part, provides:
"No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance."
The recent Louisiana Supreme Court case of A.I.U. Insurance Co. v. Roberts, 404 So.2d 948 (1981), which reversed our decision reported in La.App., 395 So.2d 375, took the following line of reasoning: The requirement that there be UM coverage is an implied amendment of any automobile liability insurance policy which does not expressly provide UM coverage, as UM coverage will be read into the policy, unless rejected. Thus, rejection of UM coverage is an amendment or modification of the policy, and the formal requirements of LSA-R.S. 22:628 applied before Act No. 438 of 1977 took effect on September 9, 1977. Act No. 438 of 1977 is a particular statute, while R.S. 22:628 is a general statute, but the formal requirements of Act No. 438 apply only after the Act took effect on September 9, 1977. The version of LSA-R.S. 22:1406(D) which was in effect earlier contained no formal requirements for rejection. Hence, prior to September 9, 1977, the effective date of Act No. 438 of 1977, which amended LSA-R.S. 22:1406(D), rejection of UM coverage had to be in writing and physically attached to the policy, as was provided in the general requirements of R.S. 22:628.
None of the acts of attempted rejection of UM coverage by Browning-Ferris mentioned above met these requirements as to form. The setting forth in writing in the insurance proposal of a desire to have UM coverage only in states where such coverage was legally required and indicating that otherwise such coverage was rejected did not constitute an effective rejection of UM coverage, as such written rejection would have had to be attached to the policy. Nor were the indications verbal or written adverted to in the affidavits and deposition mentioned above a legally effective rejection of UM coverage as they were not attached to the policy.
*508 Also attached to the CNA policy is a standard insurance form rejecting UM coverage in Louisiana. This form is signed by C. P. J. Mooney, an official of Browning-Ferris, the insured, and is dated 2-9-77. We believe that this particular written rejection of UM coverage meets the formal requirements of Louisiana law for the rejection of UM coverage, but it could not be effective until February 9, 1977, the date it was signed, several weeks subsequent to the accident of January 1, 1977, out of which this lawsuit arises.
Although, as stated in A.I.U. Insurance Co. v. Roberts, supra, "Uninsured motorist coverage is to be determined not only by the provisions of the contract but also by applicable statutes", the CNA policy on its face clearly contained UM coverage in Louisiana. The policy contained several endorsements pertaining to UM coverage in various states including an endorsement with respect to UM coverage in Louisiana. This endorsement dealt principally with defining uninsured motorists to include underinsured motorists. If there was no UM coverage under the policy, there would have been no need for an endorsement to more specifically set forth coverage.
Further confirming our view that UM coverage in Louisiana was afforded by CNA is the fact that annexed to the CNA policy is a rejection of UM coverage in Kentucky, dated "9-30-76" signed by C. P. J. Mooney. Thus, it is obvious there was no valid rejection of UM coverage in Louisiana until the Louisiana rejection dated "2-9-77" was signed.
There is nothing in writing and annexed to the policy that could conceivably be considered to reject UM coverage in the policy issued by Combined Companies. As under A.I.U. Insurance Co. v. Roberts, supra, UM coverage is afforded unless rejected in valid form. Combined Companies likewise extended UM coverage.
The CNA policy afforded automobile liability coverage up to $500,000 above retained limits of $100,000. We can find no setting forth of retained limits under the CNA policy insofar as it affords UM coverage. However, on the present motion for summary judgment, the extent of the UM coverage afforded under the CNA policy is not at issue, but merely the existence vel non of such coverage. Hence, we do not decide the extent of the UM coverage afforded by CNA.
The judgment of the trial court is affirmed in discharging Browning-Ferris as a party defendant, and reversed insofar as it discharges CNA and Combined Companies, and remanded for further proceedings as to CNA and Combined Companies, consistent with this opinion, all costs to be paid one-half by plaintiff, and one-half by CNA and Combined Companies.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COVINGTON, Judge, dissenting in part and concurring in part:
I dissent in part, and concur in part. I can not agree with the majority opinion that the language "delivered or issued" in LSA-R.S. 22:1406(D) indicates that there must be an insurance policy for UM coverage, or that it was not intended by the legislature that self-insurance should entail UM coverage. I can not accept the argument that by opting to be self-insured one can evade the obligation of UM coverage.
The statute in effect requires uninsured motorist protection be provided by all motorists in this state in not less than the limits described in the Motor Vehicle Safety Responsibility Law, unless rejected in writing. The statute provides for broad coverage and protection from harm caused by an uninsured motorist. See Earl v. Commercial Union Insurance Company, 391 So.2d 934 (La.App. 2 Cir. 1980); Bourgeois v. United States Fidelity and Guaranty Company, 385 So.2d 584 (La.App. 4 Cir. 1980), writ denied, 393 So.2d 736 (La.1980).
The certificate which Browning-Ferris obtained from the Financial Responsibility Division of the Louisiana Department of Public Safety permitting it to act as a self-insurer was in lieu of the insurance policy which it otherwise would have had to obtain. *509 Such a certificate (as substitute for an insurance policy) is a "policy" for purposes of the Uninsured Motorist law. A self-insured is required, under LSA-R.S. 22:1406(D), to take the affirmative steps to reject uninsured motorist coverage that any other insured must take. A self-insured is not exempt under the statute from taking the requisite positive action. A self-insured is expected to provide coverage for at least the same risks that other motorists are required by law to cover. See LSA-R.S. 32:1042.
By qualifying as a self-insurer, Browning-Ferris chose to insure itself for all automobile liability coverage, including UM coverage. I would reverse the judgment appealed insofar as it dismissed Browning-Ferris as a party defendant, rather than affirming.
I concur in that part of the majority opinion which reversed the judgment of the trial court which discharges CNA and Combined Companies.