526 So.2d 835 (1988)
Hazel HEBERT, et al., Plaintiffs-Appellants,
v.
Floyd WILLIAMS, et al., Defendants-Appellees.
No. 87-389.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
Rehearing Denied June 21, 1988.
*836 Domengeaux & Wright, Anthony Moroux, Lafayette, for plaintiff-appellee.
Hawley & Schexnayder, W. Paul Hawley, Lafayette, for plaintiffs-appellants.
Gibbens & Blackwell, J. Louis Gibbens, New Iberia, Preis, Kraft, Laborde & Daigle, P.C., Chris R. Phillip, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, P.C., Joel E. Gooch, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James L. Pate, Lafayette, for defendants-appellees.
Christovich & Kearney, Lawrence Ernst, New Orleans, for defendant-appellant.
Before LABORDE, YELVERTON and KNOLL, JJ.
LABORDE, Judge.
This suit arises from a fatal automobile accident that took the life of plaintiffs' decedent, Carlton G. Hebert. Plaintiffs in this case are the widow, Hazel S. Hebert, and four major children of the deceased, Didier G. Hebert, Rene Jude Hebert, Carla Ann Hebert, and Cassie Lynn Hebert.
Plaintiffs' original suit named three defendants: Floyd Williams, Sr., his liability insurer, Travelers Insurance Company (Travelers), and General Motors Corporation. In a supplemental and amending petition, plaintiffs added as defendants Southern Pacific Transportation Company (Southern Pacific), GELCO Corporation, its primary liability and uninsured motorist carrier, Home Indemnity Company, and First State Insurance Company, its excess carrier. In their second supplemental and amending petition, plaintiffs added International Surplus Lines Insurance Company (International Surplus), the excess carrier for Southern Pacific.
This appeal is limited to the review of two summary judgments granted in favor of Southern Pacific and International Surplus. The trial court found that Southern Pacific, as a certified self-insurer, owed no uninsured motorist coverage to plaintiffs; and that International Surplus, as an excess carrier, did not provide uninsured motorist coverage to plaintiffs from the first dollar of plaintiffs' claim, but only for any excess over $8,000,000.00 to their $12,000,000.00 limits. Plaintiffs devolutively appealed these judgments. First State Insurance Company failed to perfect its appeal; therefore, its position cannot be considered. After a thorough review of the record and reflection upon current jurisprudence, we find that as a matter of law, Southern Pacific and International Surplus are entitled to judgment. The summary judgments granted by the trial court are affirmed.

FACTS
On September 25, 1982, after rerailing a railroad car for their employer, Southern Pacific, Carlton Hebert and his helper, Larry Huval, attempted to return to Lafayette, Louisiana. Mr. Hebert drove and Mr. Huval sat in the passenger seat of the 1982 GM pick-up truck owned by GELCO and leased to Southern Pacific. The pair proceeded westward on U.S. 90. The truck was in the right lane of traffic as it approached the intersection of Highway 90 and Darnell Rd. Highway 90 is clearly the dominant route with four lanes of traffic. The east and westbound lanes of Highway 90 are divided by a neutral ground almost 500 feet wide. Darnell Road is regulated by stop signs and flashing red lights.
As the Southern Pacific truck reached the middle of the intersection at Darnell Road, it was broadsided by a vehicle owned and operated by Floyd Williams, Sr. Mr. Williams ran the stop sign controlling Darnell Road on the neutral ground side. The Williams car struck the Southern Pacific truck on the driver's side. The driver, Mr. Hebert, was killed. The passenger, Mr. Huval, was severely injured. Several lawsuits have arisen from this accident; however, as mentioned above, only plaintiffs' claims for uninsured motorist benefits from Southern Pacific and International Surplus are at issue in this appeal.

*837 UNINSURED MOTORIST PROTECTION: SOUTHERN PACIFIC
Southern Pacific leased the truck involved in the accident from GELCO. The lease agreement gave Southern Pacific the option to either provide insurance on the truck or to be self-insured. It is undisputed that Southern Pacific was a qualified self-insurer in Louisiana at the time of the accident and that the vehicles it leased from GELCO were included under the self-insurance certificate issued by the State of Louisiana. Southern Pacific was self-insured up to $8,000,000.00, beyond which Southern Pacific carried excess insurance with International Surplus up to $12,000,000.00.
Plaintiffs assert that a self-insurer (Southern Pacific) which does not expressly waive uninsured motorist protection is obligated under LSA-R.S. 22:1406(D) to provide uninsured motorist coverage up to the liability limits of the self-insurance certificate. The trial court found, and defendant reurges on appeal, that as a self-insurer Southern Pacific does not fall within the confines of LSA-R.S. 22:1406(D). We find that a self-insurer is not obligated to express in writing a rejection of uninsured motorist insurance.
The Compulsory Motor Vehicle Liability Security Law, LSA-R.S. 32:861 et seq., allows vehicle owners several means of establishing financial responsibility. These include: 1) a motor vehicle liability policy as defined by LSA-R.S. 32:900; 2) a motor vehicle liability bond; 3) a certification of the State Treasurer stating that cash or securities have been deposited with the Treasurer; or 4) a certification of self-insurance as provided by LSA-R.S. 32:1042. Only one method, number 1 above, contemplates the use of insurance; therefore, it is the only method controlled by our insurance code, specifically LSA-R.S. 22:1406(D).
In their attempt to assert uninsured motorist coverage, plaintiffs graft the written waiver requirement of LSA-R.S. 22:1406(D)(1)(a)[1] to the provisions of self-insurance certification of LSA-R.S. 32:1042.[2] However, Louisiana Courts have already rejected plaintiffs' position.
The bellwether case addressing this issue in Louisiana is Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writ denied, 409 So.2d 654 (La.1982). The court noted that LSA-R.S. 22:1406(D) uses the words "delivered or issued" in its requirement that there be uninsured motorist coverage unless *838 properly rejected. The court opined that by using that language, "the statute contemplates that there be a policy of insurance, as self-insurance can neither be `delivered' nor `issued' but rather, simply, exists apart from any issuance or delivery. Thus, it was not intended by the legislature that self-insurance should entail UM coverage." Id. at 504. The court held that a certified self-insured does not afford uninsured motorist coverage.
"Were we to hold that the UM coverage requirements of LSA-R.S. 22:1406(D) are applicable to a self-insured, the UM rejection provision of the statute would become impracticable for the reason that there is no person, office, agency, or other legal entity provided for by statute to whom rejection could be communicated. Thus, if we were to accept plaintiff's position, UM coverage would become mandatory and thereby even broader if there were self-insurance than if there were a basic automobile liability insurance policy. Such an anomalous result could not have been intended by the legislature."
Id. at 505.
In Harrison v. Petri, 468 So.2d 666, (La. App. 4th Cir.1985), the appellate court correctly refused to disapprove of the well-reasoned holding of Jordan:
"La.R.S. 22:1406D.(1)(a) provides, generally, that auto liability insurance policies shall be issued with UM coverage provided unless such coverage is rejected by any insured named in the policy. Louisiana does not universally require UM coverage; insureds may reject UM coverage. If those insured commercially may reject UM coverage, so too may those self-insured. As to appellant's argument that there should be some procedural requirement for self-insureds to reject UM coverage, the statute does not so require and we agree with the Jordan v. Honea conclusion that such a requirement is impracticable and unnecessary.
Appellant has cited to us the decisions of courts in other states which require self-insureds to provide UM coverage. We have reviewed the decisions cited. In all of the cases appellant cites, the state involved required UM coverage on all vehicles registered or principally garaged in that state. An insured's option of rejecting coverage was not available. The courts of those states thus decided that since all vehicles needed UM coverage, self-insureds could not dispense with the required protection.
As noted above, Louisiana does not require all vehicles to carry UM coverage. We, therefore, find no requirement for self-insureds to provide UM protection within the self-insured retained limits."
Harrison, 468 So.2d at 667. We find the reasoning articulated in Jordan and Harrison compelling.
Plaintiffs draw our attention to other Louisiana appellate cases; however, these cases are inapposite. Consider Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir), writ denied, 472 So.2d 28 (La.1985). There, plaintiff, Clifford Ashline, was struck by a car owned and operated by defendant, Ronald Simon. Plaintiff had been driving a car leased to his employer from the Hertz Corporation (Hertz). Plaintiff sought uninsured motorist benefits from Hertz, a certified self-insurer. Hertz contracted to provide the lessee with liability coverage; at the same time, it attempted to exclude uninsured motorist coverage without giving the lessee the option of accepting, reducing, or rejecting uninsured motorist coverage. The Ashline court held that the rejection was invalid under LSA-R.S. 22:1406(D). The court merely recognized the long-standing rule that if liability coverage is offered, uninsured motorist coverage in not less than the limits of bodily injury liability limits must also be offered. In the case sub judice, GELCO gave Southern Pacific the option to provide liability insurance for the fleet of cars, or to certify itself as self-insured. Southern Pacific chose to be self-insured; therefore, LSA-R.S. 22:1406(D) does not come into play. The other cases cited by plaintiffs, Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); Bordelon v. Jackson, 499 So.2d 392 (La.App. 4th Cir.1986), writ not considered, 500 So.2d 412 (La.1987); Donnelly *839 v. Greyhound Rent-A-Car, 490 So.2d 377 (La.App. 4th Cir.), writ denied, 493 So.2d 1220 (La.1986); and Tapia v. Ham, 480 So.2d 855 (La.App.2d Cir.1985), writ denied, 484 So.2d 138 (La.1986), involved the question of whether uninsured motorist coverage was validly rejected by the insured. The effect of a self-insurance did not arise in those cases.
As we find that Southern Pacific, a certified self-insurer under LSA-R.S. 32:1042, does not afford uninsured motorist coverage to plaintiffs, we need not address whether Southern Pacific, an employer under the Federal Employers' Liability Act, can be obligated to pay uninsured motorist benefits under state law. For the reasons given above, the summary judgment granted in favor of Southern Pacific is affirmed.

UNINSURED MOTORIST PROTECTION: INTERNATIONAL SURPLUS
International Surplus issued a policy of insurance to Southern Pacific. The policy was in effect from March 31, 1982 until March 31, 1983. Coverage was provided for property and casualty in the amount of $12,000,000.00 ultimate net loss for any one occurrence in excess of the $8,000,000.00 self-insurance retention. As discussed above, Southern Pacific was a qualified self-insurer under Louisiana law.
Plaintiffs assert that the policy issued by International Surplus to Southern Pacific covers their uninsured motorist claims from "the first dollar above the Williams-Travelers $10,000.00 liability policy" to the $12,000,000.00 limit. The trial court found that plaintiffs would be entitled to recover uninsured motorist benefits from International Surplus only for damages in excess of $8,000,000.00 to the $12,000,000.00 policy limit. After reviewing the policy provisions in pari materia, we conclude that the trial court's grant of summary judgment was eminently correct.
The International Surplus policy does not expressly provide for uninsured motorist coverage. The failure of Southern Pacific to validly reject or amend the coverage, under the dictates of Southern American Insurance v. Dobson, 441 So.2d 1185, 1191 (La.1983), conforms the International Surplus policy to LSA-R.S. 22:1406(D)(1)(a) and thus provides uninsured motorist coverage. The question remains: does the protection begin at the self-insured retention level, $8,000,000.00, or does the protection "drop down" to begin at the Williams-Travelers level, $10,000.00?
The liability limits provided by the International Surplus policy are unambiguously stated on the declaration sheet:

"COVERAGE OR AMOUNT OF
CONDITIONS INSURANCE
COMBINATION PROPERTY $12,000,000 ULTIMATE
AND CASUALTY AS PER NET LOSS ANY ONE OCCURRENCE
MANUSCRIPT FORMS ATTACHED EXCESS OF
 $8,000,000 SELF INSURED
 RETENTION ULTIMATE
 NET LOSS ANY ONE OCCURRENCE"

It is repeated under "Schedule":
"SUM INSURED:
$12,000,000 ANY ONE OCCURRENCE LIABILITY AND PHYSICAL LOSS OR DAMAGE ALL AS ABOVE. BUT IN THE EVENT OF A COMBINED LOSS NOT MORE THAN $6,000,000 APPLICABLE TO PHYSICAL DAMAGE AND CARE, CUSTODY AND CONTROL.
EXCESS OF:
$8,000,000 ANY ONE OCCURRENCE SELF-INSURED RETENTION."
The portion of the policy subtitled "Conditions" also clearly set forth the policy limits and requirements for self-insurance retention:
"CONDITIONS
A. CONDITIONS APPLICABLE TO SECTIONS I & II HEREOF
1. LIMIT AND RETENTION
(A) LIMIT
(1) WITH RESPECT TO LOSS INVOLVING ONLY SECTION I HEREOF THE LIMIT OF LIABILITY HEREUNDER SHALL NOT EXCEED THE SUM OF $12,000,000 ULTIMATE NET LOSS, ANY ONE OCCURRENCE EXCESS OF $8,000,000 SELF-INSURED RETENTION ULTIMATE *840 NET LOSS, ANY ONE OCCURRENCE.
* * * * * *
(B) RETENTION
THE COMPANY [INTERNATIONAL SURPLUS] SHALL NOT BE LIABLE HEREUNDER UNLESS THE ULTIMATE NET LOSS AMOUNTS TO $8,000,000 ANY ONE OCCURRENCE INVOLVING LOSS, DAMAGE, AND/OR INDEMNIFICATION AS COVERED IN SECTION I & II HEREOF AND THEN ONLY FOR THE SUM IN EXCESS OF $8,000,000 ULTIMATE NET LOSS SUBJECT TO THE LIMIT SET FORTH IN SECTION III-A.1.a, HEREIN BUT THERE IS NO LIMIT TO THE NUMBER OF OCCURRENCES WHICH TAKE PLACE DURING THE TERM OF THIS POLICY.
IT IS A CONDITIONS [sic] OF THIS POLICY THAT IN THE EVENT OF A LOSS HEREUNDER THAT INVOLVES BOTH SECTIONS I AND II THAT THE SELF-INSURED RETENTION SPECIFIED HEREIN SHALL APPLY TO SECTION II FIRST."
Further, under "Conditions," the policy also allows Southern Pacific to contract for other insurance:
"6. PRIMARY INSURANCE
IT IS AGREED THAT THE INSURED, IF IT SO DESIRES, MAY CARRY PRIMARY INSURANCE BUT THIS POLICY WILL PAY THE ULTIMATE NET LOSS IN EXCESS OF SUCH PRIMARY INSURANCE WHICH IS VALID AND COLLECTIBLE OR THE SELF-INSURED RETENTION STATED HEREIN WHICHEVER IS GREATER, SUBJECT TO THE TERMS AND CONDITIONS OF THIS POLICY.
7. OTHER INSURANCE
NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, IT IS FURTHER UNDERSTOOD AND AGREED THAT WHERE THERE IS ANY OTHER VALID AND COLLECTIBLE INSURANCE COVERING THE INSURED'S PROPERTY OR THE INSURED'S LIABILITY, AS HEREIN DEFINED, THIS INSURANCE SHALL BE CONSIDERED AS EXCESS INSURANCE OVER AND
ABOVE SUCH OTHER INSURANCE IN EFFECT AT THE TIME OF LOSS OR DAMAGE. PERMISSION IS HEREBY GRANTED FOR EXCESS INSURANCE OVER THE LIMITS OF LIABILITY EXPRESSES [sic] IN THIS POLICY WITHOUT PREJUDICE TO THIS INSURANCE AND THE EXISTENCE OF SUCH INSURANCE. IF ANY, SHALL NOT REDUCE ANY LIABILITY UNDER THIS POLICY."
The "Conditions" also provide for losses payable:
"10. LOSS PAYABLE
THE COMPANY'S LIABILITY UNDER THIS POLICY WITH RESPECT TO ANY OCCURRENCE SHALL NOT ATTACH UNTIL THE AMOUNT OF THE APPLICABLE RETENTION OR OTHER INSURANCE LIMIT HAS BEEN PAID BY OR ON BEHALF OF THE INSURED ON ACCOUNT OF SUCH OCCURRENCE."
We find no ambiguity under the language of this policy. Southern Pacific is obligated to retain $8,000,000.00 in self-insurance. In turn, International Surplus is obligated to provide excess insurance from that amount to $12,000,000. Plaintiff's demand in damages amounts to less than $2,000,000.00; thus, clearly within the Southern Pacific self-insured retained limit of $8,000,000.00 and below International Surplus' excess coverage. In Harrison v. Petri, 468 So.2d 666, 667, the Court summarily dispensed with plaintiff's claim after a similar syllogism.
Plaintiffs in this case, however, emphasize the co-insurance clause of § IIIA(7), "Other Insurance." Plaintiffs contend that International Surplus unwittingly acceded to "drop down" by stating that, "Notwithstanding anything to the contrary contained herein, it is further understood and agreed that where there is any other valid and collectible insurance covering the insured's *841 property or the insured's liability, as herein defined, this insurance shall be considered as excess insurance...." (emphasis added) Plaintiffs contend that paragraph 7 controls because there is no other "valid and collectible" insurance. Therefore, plaintiffs assert, the excess carrier steps down to the first dollar of the claims. In support of this proposition, plaintiffs cite Doty v. Safeco Insurance Co., 400 So.2d 718 (La.App.3d Cir.), writ denied, 409 So.2d 611 (La.1981); Beauregard v. Salmon, 205 So.2d 634 (La.App.2d Cir.1967), reversed after remand, 211 So.2d 732 (La. App.2d Cir.1968); and Gros v. Houston Fire and Casualty Insurance Co., 195 So. 2d 674 (La.App. 1st Cir.), writ refused, 250 La. 644, 197 So.2d 898 (1967). Each of these cases turned on co-insurance; as such, the cases are inapposite. Apart from this, the cases do not quote excess policy language mandating a specified amount of underlying insurance or self-insurance retention.
In this case, Southern Pacific opted, as was its right, not to provide its employees with uninsured motorist coverage. It also opted not to protect itself with other insurance. Therefore, we find that the "Other Insurance" clause which plaintiffs rely upon for "drop down" coverage is inapplicable. However, were the clause viable, the policy provisions read in pari materia limits International Surplus' liability from $8,000,000.00 (Southern Pacific's self-insurance retention) to the policy limits of $12,000,000.00. See Washam v. Diamond Chancellor, 498 So.2d 97 (La.App. 5th Cir. 1986), affirmed, 507 So.2d 806 (La.1987), wherein the courts held that the excess insurer was entitled to rely upon provisions in the policy stating that the insured would retain underlying insurance up to $500,000.00. See also Mission National Ins. Co. v. Duke Transportation Co., Inc., 792 F.2d 550 (5th Cir.1986), and Continental Marble & Granite v. Canal Insurance Co., 785 F.2d 1258 (5th Cir.1986).

CONCLUSION
The trial court did not err when it found that Southern Pacific and International Surplus were entitled to summary judgments as a matter of law under LSA-C.C.P. art. 966. As Southern Pacific was a certified self-insurer under LSA-R.S. 32:1042, there was no policy delivered or issued in Louisiana to reform in compliance of LSA-R.S. 22:1406(D). As International Surplus was an excess insurer, its liability began at $8,000,000.00, the contracted for self-insurance retention of Southern Pacific. Plaintiffs claim demanded only $2,000,000.00; therefore, plaintiffs cannot reach the International Surplus coverage.
For the above and foregoing reasons, the judgments of the trial court are affirmed. Costs of this appeal are taxed to plaintiffs.
AFFIRMED.
KNOLL, J., dissents.
NOTES
[1] At the time of the accident, LSA-R.S. 22:1406(D)(1)(a) provided in pertinent part:

"(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
[2] At the time of the accident, LSA-R.S. 32:1042 provided in pertinent part:

"A. Any person in whose name more than twenty-five motor vehicles are registered or who owns property in Louisiana assessed in his name having a value of fifteen thousand dollars or more after deducting any encumbrances thereon from its assessed valuation may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in Subsection B of this Section.
B. The commissioner may, at his discretion, upon the application of such a person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person."