690 So.2d 225 (1997)
Peggy TYBUSSEK, wife of/and Maximillion Tybussek
v.
Jimmy WONG, Old Hickory Casualty Insurance Company, Carolina Casualty Insurance Company, Curtis Pettigrew, III, Liberty Lloyd's Insurance Company, and Louisiana Insurance Guaranty Association.
No. 96-CA-1981.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1997.
Writ Denied May 1, 1997.
*226 Fred L. Herman, Fred L. Herman, A Professional Law Corporation, New Orleans, for Plaintiffs-Appellees Peggy Tybussek, wife of/ and Maximillion Tybussek.
John J. Weigel, Robert L. Walsh, Alida C. Hainkel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for Defendant-Appellant Carolina Casualty Insurance Company.
David J. Mitchell, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Defendant-Appellee State Farm Automobile Insurance Company.
Before KLEES, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Carolina Casualty Insurance Company ("Carolina Casualty") filed a writ application and a devolutive appeal with this Court, seeking review of a district court judgment granting summary judgment in favor of State Farm Insurance Company ("State Farm") and partial summary judgment in favor of Peggy and Maximillion Tybussek ("Plaintiffs"). On November 19, 1996, this Court granted Carolina Casualty's writ application and reversed the trial court's judgment. However, upon realizing that the writ application was also the subject of an appeal, and that the appeal had been lodged and briefed, this Court vacated its writ judgment and consolidated the writ application for disposition with this appeal.

*227 STATEMENT OF THE CASE

Plaintiffs brought this action alleging damages arising from an automobile accident. Plaintiff Maximillion Tybussek, an employee of the Sewerage and Water Board of New Orleans ("Board"), was driving a truck owned by his employer, the Board, and acting in the scope and course of his employment when the accident occurred. The damages sustained by Plaintiffs were allegedly caused by the negligence of defendants, Jimmy Wong and Curtis Pettigrew, III.
Plaintiffs' initial petition named Old Hickory Casualty Insurance Company, defendant Jimmy Wong's insurer, Liberty Lloyd's Insurance Company, Curtis Pettigrew's insurer, and Carolina Casualty, the Board's insurer, as defendants. Alleging the insolvency of Old Hickory and Liberty Lloyd, Plaintiffs' petition also named Louisiana Insurance Guaranty Association as a defendant. The Louisiana Insurance Guaranty Association and its insured have since been dismissed from this action. Plaintiffs subsequently added State Farm as a defendant, claiming UM benefits under a policy State Farm issued to Maximillion Tybussek, personally.
After the filing of the initial petition, the Board intervened, seeking recovery of worker's compensation benefits the Board had paid to Plaintiffs from any insurance benefits recovered by Plaintiffs. In response to the Board's intervention, Plaintiffs filed exceptions of no cause or right of action and asserted a third party demand against the Board, alleging that the Board was obligated to cover the first $100,000 of the UM benefits to which Plaintiffs would be entitled had the Board not agreed "by the terms of the Carolina Casualty Policy to be self-insured for the first $100,000 of the underinsured or uninsured motorists coverage." In response to Plaintiffs' third party demand, the Board filed an exception for no cause of action alleging that worker's compensation is a plaintiff's exclusive remedy against an employer, and that the Board was therefore not responsible for any UM benefits allegedly owed Plaintiffs.
After responsive pleadings were filed, State Farm filed a Motion for Summary Judgment against Carolina Casualty, contending that the Carolina Casualty policy provided $1,000,000 worth of primary UM coverage, irrespective of the $100,000 self-insured retention ("SIR") limit, and that Carolina Casualty's full $1,000,000 policy limit must be exhausted before triggering State Farm's obligations. Additionally, Plaintiffs filed a Motion for Partial Summary Judgment, or Alternatively, Declaratory Judgment, seeking to have the Carolina Casualty's policy read to provide uninsured motorist coverage up to $1,000,000 without the self-insured retention limit.
Following a hearing on the parties' exceptions and motions, the trial court rendered judgment on June 17, 1996, wherein the court: (1) granted the Board's Exception of No Right or Cause of Action, (2) dismissed Plaintiffs' Third Party Demand Against the Board, (3) granted State Farm's Motion for Summary Judgment, and (4) granted Plaintiffs' Motion for Partial Summary Judgment, or Alternatively, for Declaratory Judgment. The trial court held that the Carolina Casualty policy is the primary UM policy, that the policy provides full UM benefits up to $1,000,000, and that the Carolina Casualty policy must be exhausted before State Farm's UM policy is effected. It is from this judgment that Carolina Casualty appeals.
SPECIFICATION OF ERRORS
1. Whether the trial court erred in granting Plaintiffs' Motion for Partial Summary Judgment, or Alternatively, for Declaratory Judgment, by finding that Plaintiffs are entitled to full recovery under the Carolina Casualty UM Policy, from the first dollar of the total amount of any settlement or judgment herein up to the maximum of $1,000,000.
2. Whether the trial court erred in granting State Farm's Motion for Summary Judgment by finding that the Carolina Casualty Policy is the primary UM policy and that the policy provides full UM benefits to Plaintiffs in the full amount of $1,000,000, which limits must be exhausted before the Plaintiffs have any rights against State Farm's UM policy limits.

*228 STANDARD OF REVIEW

After considering the recent changes to La. C.C.P. art. 966(C), this Court most recently stated the standard for reviewing a motion for summary judgment in Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4 Cir. 9/11/96), 681 So.2d 19, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934. As stated in Daniel, appellate courts must review summary judgments de novo. Appellate courts must ask the same questions as do the trial courts: whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law.
Procedurally, the court's first task on a motion for summary judgment is to determine whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. La. C.C.P. art. 966(B). Op. at 227. If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 584. If the court finds that the moving party established a prima facie case that no genuine issues of material fact exists, the party opposing the summary judgment must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
As explained by this Court in Daniel, the 1996 amendments to La. C.C.P. art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Daniel, 681 So.2d at 20; Walker, 678 So.2d at 584; Short v. Giffin, 96-0361 (La.App. 4 Cir. 8/21/96), 682 So.2d 249. However, the amendments do make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules should be liberally applied, requiring courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the pre-amendment jurisprudence which proclaimed just the oppositethat summary judgments were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
Moreover, once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the new law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party as does the federal rule. This creates a problem because La. C.C.P. art. 966(G) declares that "notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover." The effect of the amendment, however, is that the non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly-supported motion for summary judgment.
1. ASSIGNMENT OF ERROR NO. 1: Did the trial court err in finding as a matter of law that Plaintiffs are entitled to full recovery under the Carolina Casualty UM Policy, from the first dollar of the total amount of any settlement or judgment herein up to the maximum of $1,000,000?
Neither party disputes that the Carolina Casualty Policy at issue contains a self-insured retention limit of $100,000. Additionally, neither party disputes that Carolina Casualty provides coverage for claims over $100,000 and up to $1,000,000. Rather, Plaintiffs contend that they are entitled to full recovery under the Carolina Casualty UM Policy, inclusive of the Board's $100,000 self-insured retention limit, because: (1) the Board is not a certified self-insurer under La. R.S. 32:1041 et seq., because the statute excludes political subdivisions; (2) the Board is required to provide UM coverage for its self-insured risk; (3) the Board's self-insured retention limit, as set forth in the Carolina Casualty Policy, applies only to automobile liability and not UM coverage; and (4) even *229 if the self-insured retention limit does apply to UM coverage, Carolina Casualty must still pay the claim and seek reimbursement from the Board.
Conversely, Carolina Casualty contends that as a matter of law, Plaintiffs are not entitled to recover the Board's self-insured retention limit of $100,000 from Carolina Casualty because: (1) Carolina Casualty should only be held liable for the policy amount it contractually agreed to, and pursuant to the express and unambiguous terms of the Carolina Casualty Policy, Carolina Casualty contractually agreed to cover claims only in excess of $100,000 and up to $1,000,000; (2) the statutory worker's compensation scheme is an employee's exclusive remedy against his employer for damages resulting from injuries which occur during the course and scope of his employment, and to require Carolina Casualty to pay the Board's self-insured retention limit, with a right to seek indemnification from the Board, would allow Plaintiffs to do indirectly what they could not do directlyrecover damages from the Board in excess of workers' compensation benefits; (3) as a political subdivision, the Board is not required to obtain liability insurance on its vehicles nor a certificate of self-insurance. Accordingly, the Board should not be penalized for electing to obtain liability insurance in excess of $100,000, by imposing liability on the Board for any amount less than the policy amount; and (4) as a self insurer, the Board is not required to provide any UM coverage or liability for UM benefits.
To determine whether Plaintiffs are legally entitled to full recovery under the Carolina Casualty UM Policy, from the first dollar of the total amount of any settlement or judgment herein up to the maximum of $1,000,000, we must determine: (1) whether the Board is a certified self-insurer for purposes of UM coverage; (2) whether a self-insurer is required to provide UM coverage for its self insured risk; (3) whether the Carolina Casualty Policy's self-insured retention limit extends to the UM coverage provision, and (4) whether Carolina Casualty is liable for the Board's self-retention limit.
1. THE BOARD IS A CERTIFIED SELF-INSURER FOR PURPOSES OF UM COVERAGE.

We disagree with Plaintiffs' contention that the Board is not a certified self-insurer under La. R.S. 32:1041 et seq., which exempts political subdivisions and entities, such as the Board, from having to obtain a "certificate" of self-insurance. We also disagree with Plaintiffs' contention that as an "uncertified" self-insurer, the Board must provide UM coverage in the amount of its self-insured retention limit.
Pursuant to La. R.S. 32:851, et seq., also referred to as the Louisiana Motor Vehicle Safety Responsibility Law ("LMVSRL"), the owner of a motor vehicle registered in Louisiana (with the exception of certain classifications of vehicles) is required to maintain sufficient security to satisfy any judgment against that owner arising out of the use/operation of the vehicle. The motor vehicle owner may either: (1) purchase a motor vehicle liability policy; (2) post a motor vehicle liability bond; (3) deposit with the state treasurer sufficient cash and securities to insure the risk; or (4) obtain a certificate of self-insurance in accordance with the terms of La. R.S. 32:1042. To obtain a certificate of self insurance in accordance with La. R.S. 32:1042, a vehicle owner must present proof of sufficient assets to pay judgments against him. The "certificate" merely indicates that the self-insured is fiscally responsible and will pay damage claims and judgments involving its liability exposure. Hearty v. Harris, 574 So.2d 1234, 1237-1238 (La.1991). Just because La. R.S. 32:1041 expressly exempts the Board from the certification process for purposes of satisfying LMVSRL does not mean that the Board is not self-insured. Plaintiffs do not offer any valid reason why a "private" vehicle owner who complies with the LMVSRL by following the procedural requirements of certification should be treated any differently from a political entity who is exempt from this certification process. Regardless of the process of obtaining self-insured status, once self-insured, the vehicle owner does not have to provide UM coverage.

*230 2. AS A SELF-INSURER, THE BOARD IS NOT REQUIRED TO PROVIDE UM COVERAGE FOR ITS SELF INSURED RISK.

Under Louisiana law, self-insurers have no obligation to provide UM coverage because self insurance is not considered an insurance policy and UM coverage is only required if an insurance policy is purchased. Thus, although a vehicle owner has the option of obtaining a certificate of self-insurance, by doing so, the owner is neither purchasing insurance nor insuring the risk of having to pay UM benefits. See Hearty v. Harris, 574 So.2d at 1237-1238; Jordan v. Honea, 407 So.2d 503, 504 (La.App. 1 Cir. 1981), writs denied, 409 So.2d 654 and 660 (La.1982); Jones v. Henry, 542 So.2d 507, 509 (La.1989). Here, the policy issued by Carolina Casualty to the Board clearly states that the Board is self-insured for the first $100,000. Accordingly, as a self-insured, the Board is not required to provide UM coverage within the self-insured retention limit.
3. THE CAROLINA CASUALTY POLICY'S SELF-INSURED RETENTION LIMIT EXTENDS TO THE UM COVERAGE PROVISION.

The Carolina Casualty Policy in effect at the date of the accident had a $100,000 self-insured retention and a one million dollar maximum. The policy also contained UM limits which were coextensive with the liability limits. Accordingly, the policy as written unambiguously provides that Carolina Casualty's liability for UM benefits to any party only begins after that party has incurred $100,000 in damages in excess of the tortfeasor's automobile liability coverage.
Specifically, the policy's declaration sheet refers to Endorsement 1 for liability limits, which states in relevant part:
Limits of Uninsured Motorist including uninsured motorist coverage shall read: Inclusive of the self-insured limit stated in Endorsement II, $1,000,000 Combined Single Limit each accident for private passenger autos and light service vehicles only.
Endorsement I clearly states that the policy limits incorporate the "self-insured limit" found in Endorsement II for purposes of both liability coverage and UM coverage. Endorsement II entitled "Self-Insured Retention ("SIR")" sets the self-insured retention at $100,000. Thus, Carolina Casualty's policy limits for automobile liability begin at $100,000 and end at one million dollars.
Plaintiffs argue that the policy does not contain "a clear and unmistakable exclusion" of UM coverage, thus requiring full coverage for UM benefits. What Plaintiffs fail to realize is that the Carolina Casualty Policy does, in fact, provide full UM coverage in the instant case.
Pursuant to the UM statute, La. R.S. 22:1406(d), every liability automobile policy must contain UM benefits in an amount "not less than the limits of bodily injury liability provided by the policy" unless the insured validly rejects UM coverage or selects lower limits. Here, under the Carolina Casualty Policy, UM coverage was neither rejected nor lower limits selected for the type of vehicle involved in Plaintiffs' accident. Rather, the policy was in full conformity with the statutory requirement that UM limits be in an amount "not less than the limits of bodily injury liability." That is, under the policy, the liability limits are $1,000,000 subject to the $100,000 SIR, and the UM limits are coextensive with the bodily injury coverage. Thus, "a clear and unmistakable exclusion" of UM coverage was unnecessary.
When determining the amount of UM benefits under an automobile liability policy that contains a self-insured retention, Louisiana courts give effect to the self-insured retention. Hebert v. Williams, 526 So.2d 835 (La. App. 3 Cir.), writ denied, 532 So.2d 150 (La.1988). In Hebert v. Williams, International Surplus issued to Southern Pacific a twelve million dollar automobile liability policy with an eight million dollar SIR. As UM benefits were neither rejected nor a lower limit selected, the court held that the policy provided UM benefits. The plaintiff argued that the policy covered his UM claim from the "first dollar" of damages in excess of the uninsured tortfeasors $10,000 policy. The trial court held that the plaintiff was entitled to UM benefits from International Surplus only for damages in excess of the SIR. In *231 affirming the trial court's decision, the court of appeal observed that because International Surplus was an excess insurer, "its liability began at $8,000,000, the contracted self-insurance retention of Southern Pacific." Id. at 841.
4. CAROLINA CASUALTY'S PAST PRACTICE PURSUANT TO A POLICY DIFFERENT FROM THE POLICY IN EFFECT AT THE TIME OF THE LOSS AT ISSUE HAS NO BEARING ON THIS ACTION.

Plaintiffs erroneously rely on the "Wischan claim," a prior case wherein a guest passenger in a Board vehicle insured under a Carolina Casualty policy received UM benefits even though the claim was less than $100,000. The Wischan case has no application to the present case because the claim was decided in accordance with the terms of an earlier insurance policy different from the policy in operation at the time of Plaintiffs' accident.
Specifically, the policy in existence during the year in which Harold Wischan was injured bore the number BA 20 39 60 and was effective from June 20, 1989 to June 20, 1990 (the "Wishan policy"). Under the terms of the Wischan policy, the limits of liability ran from the first dollar up to $1,000,000.00, with a $100,000 deductible endorsement. Pursuant to the deductible endorsement, the Board was required to reimburse Carolina Casualty for any settlement or claim expenses paid by Carolina Casualty, up to $100,000 per claim. Thus, under the Wischan policy, a plaintiff was entitled to UM benefits from Carolina Casualty from dollar one. As a result of the deductible endorsement, the Board was responsible for any UM expenses up to $100,000.
Conversely, the policy in existence during the year in which Mr. Tybvussek was injured bore the number BA 69 73 78 and was effective from June 20, 1990 to June 20, 1991 (the "Tybussek policy"). Under the terms of the Tybussek policy, the Board elected an SIR endorsement, rather then a deductable endorsement, to govern the parties' liability. Pursuant to the SIR endorsement and contrary to the deductable endorsement, Carolina Casualty's liability is not triggered until a claim exceeds $100,000. Thus, under the SIR endorsement, a plaintiff is only entitled to UM benefits from Carolina Casualty from $100,000 to $1,000,000. Additionally, by having an SIR as opposed to a deductible endorsement, the Board's lack of liability for UM benefits must be taken into account because the Board, and not Carolina Casualty, is liable for the first $100,000.
5. CAROLINA CASUALTY IS NOT LIABLE FOR THE BOARD'S SELF-RETENTION LIMIT.

The Board has already paid Plaintiffs over $100,000 in workers' compensation benefits. In addition to workers' compensation benefits, Plaintiffs seek recovery of the first $100,000 UM benefits, which fall within the Board's self-insured retention limit. The trial court properly dismissed Plaintiffs' argument on grounds that Plaintiffs' exclusive remedy against the Board is workers' compensation. Consequently, Plaintiffs seek to hold Carolina Casualty liable for the Board's self-retention limit, arguing that Carolina Casualty "must pay the claim and seek reimbursement from the Board." We disagree. To require Carolina Casualty to pay UM damages under $100,000 would impose a liability that Carolina Casualty did not contractually agree to. Additionally, if Carolina Casualty were required to pay, subject to indemnification from the Board, the Board in effect would become the UM insurer of its automobiles, contrary to Louisiana law. Moreover, Plaintiffs would be allowed to do indirectly what they could not do directlyrecover damages from the Board in excess of workers' compensation benefits.
2. ASSIGNMENT OF ERROR NO. 2: Did the trial court err in finding as a matter of law that the Carolina Casualty Policy is the primary UM policy, that the policy provides full UM benefits to Plaintiffs in the full amount of $1,000,000.00, and that the Carolina Casualty Policy's limits must be exhausted before the Plaintiffs have any rights against State Farm?
Carolina Casualty argues that the trial court erred when it granted State Farm's *232 motion for summary judgment, finding that Carolina Casualty's Policy provides UM coverage, inclusive of the Board's $100,000 self-retention limit. We agree. Because the Board has a self-insured retention limit of $100,000, Carolina Casualty is only liable for amounts in excess of $100,000.

CONCLUSION
For the foregoing reasons, we reverse the trial court's decision granting State Farm's Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment, or Alternatively, Declaratory Judgment. The trial court erroneously interpreted the Carolina Casualty Policy as entitling Plaintiffs to full recovery for UM coverage from the first dollar up to a maximum of $1,000,000 in disregard of the Board's self-insured retention limit of $100,000. We reverse and find that Carolina Casualty is only responsible for UM damages in excess of $100,000.
REVERSED.