694 So.2d 1189 (1997)
Carla Thomas SCOTT and Kevin Scott
v.
Louis McDANIEL, Sylvester Van Norman, Scottsdale Insurance Company, Harold J. Ivey, Percy Goulet and State Farm Mutual Automobile Insurance Company.
No. 96 CA 1509.
Court of Appeal of Louisiana, First Circuit.
May 9, 1997.
*1190 Richard G. Creed, Jr., Baton Rouge, for Plaintiffs/Appellants Carla T. Scott and Kevin Scott.
John J. Price, Baton Rouge, for Defendants/Appellees Louis McDaniel, Sylvester Van Norman and Scottsdale Insurance Co.
Glen Scott Love, Baton Rouge, for Defendants/Appellees Harold J. Ivey, Percy Goulet, and State Farm Mutual Automobile Insurance Company.
Before CARTER, LeBLANC and PARRO, JJ.
LeBLANC, Judge.
This is an appeal by the plaintiffs, Carla Thomas Scott and Kevin Scott, from a summary judgment granted in favor of the defendants, Louis McDaniel, Sylvester Van Norman and Scottsdale Insurance Company, finding no genuine issue of material fact existing regarding defendants' liability for causing an automobile accident in which the plaintiffs were injured. After a thorough review of the record, we find no error in the trial court's conclusion that the pleadings and supporting documentation reveal no genuine issue of material fact and establish that the accident was not caused by the defendant, McDaniel. Accordingly, the summary judgment dismissing plaintiffs' claim against these defendants is affirmed.

BACKGROUND FACTS
On July 16, 1994, at approximately 7:40 AM, a 1993 Nissan Sentra in which the plaintiffs, Carla and Kevin Scott, were back seat passengers, ran into the back of a logging truck and became embedded in the rear wheelbase of the truck, fatally injuring the front seat passenger of the car, and injuring the other occupants of the vehicle. (The driver of the log truck was not injured.) The previous evening, the driver of the vehicle, Lakeitha Johnson, together with Carla and Kevin Scott and Shannon Holmes, made plans to go to a casino in Natchez, Mississippi, after Ms. Johnson got off of work. Ms. Johnson went to work at Popeye's at approximately 5:00 PM on July 15, 1994, and her shift ended at approximately 11:00 that night. The foursome left Baton Rouge sometime between 1:30 and 2:00 AM on July 16, 1994, arriving at the casino at approximately 4:00 AM. They gambled at the casino and left to return home at approximately 6:00 AM. Although the sun was just coming up when they left the casino, by the time the accident occurred, it was a clear, bright, sunshiny day. Ms. Johnson was heading south on U.S. Hwy. 61, just south of Hwy. 68 (between St. Francisville and Baton Rouge), when she ran into the back of a log truck being driven by Louis McDaniel. (The truck was owned by Sylvester Van Norman and insured by Scottsdale Insurance Company.) Upon impact, Ms. Johnson's vehicle became embedded in the rear wheelbase of the truck and was dragged a short distance until McDaniel saw smoke, indicating to him that something was wrong; he then pulled over and discovered an accident had taken place. At the time of the accident, an ice truck driven by Harold J. Ivey was in the left southbound *1191 lane of Hwy. 61, almost adjacent to the logging truck. Mr. Ivey and his passenger did not actually see the impact; however, they heard it take place, and also pulled over to the side of the highway. Later, it was discovered that some red paint, allegedly from the Nissan Sentra, was on the step and tire of the ice truck. The presence of the red paint on the ice truck is the basis for the ice truck defendants' involvement in this litigation.
Several suits were filed as a result of this accident. The one on appeal before us was filed by the Scotts, Ms. Johnson's rear seat passengers, against McDaniel, Van Norman, and Scottsdale Insurance Company (hereinafter referred to collectively as "the logger defendants"), and Harold J. Ivey, Percy Goulet, the owner of the ice truck, and State Farm Mutual Automobile Insurance Company, the ice truck's insurer (hereinafter referred to collectively as "the ice truck defendants"). Numerous third party demands and cross claims were filed by and among the several defendants. (Another suit, filed in another division of the district court by the mother of the deceased passenger, in which summary judgments filed by defendants were denied, is the subject of two supervisory writs, decided this same date, 96 CW 2614 and 96 CW 2425, Holmes et al. v. Johnson et al.)
In the instant case, both the logger defendants and the ice truck defendant filed separate motions for summary judgment. The trial court granted both motions, dismissing plaintiffs' action against those defendants. Plaintiffs have appealed the grant of the summary judgment in favor of the logger defendants. They have not appealed the grant of summary judgment in favor of the ice truck defendants; that judgment is final and definitive. Therefore, the only issue before us in this appeal is whether the trial court erred in concluding that no genuine issue of material fact exists regarding the liability of the logger defendants and that the logger defendants are entitled to judgment as a matter of law.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Adamson v. State Farm Mutual Automobile Insurance Co., 95-2450, p. 5 (La. App. 1st Cir. 6/28/96); 676 So.2d 227, 230. Appellate courts review summary judgment de novo, using the same criteria applied by the trial courts in determining whether summary judgment is appropriate. Madden v. Bourgeois, 95-2354 p. 3 (La.App. 1st Cir. 6/28/96); 676 So.2d 790, 792. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. By Acts 1996, First Extraordinary Session, No. 9, the legislature amended La. C.C.P. art. 966, effective May 1, 1996, by adding the following provision:
A. (2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation. Tybussek v. Wong, 96-1981 (La.App. 4th Cir. 2/26/97); 690 So.2d 225, 229-30. This provision changes the law to the extent that summary judgments are now proclaimed to be "favored" and thus the rules should be liberally applied; whereas before the amendment, summary judgments were not favored and the provisions were strictly construed. See e.g. Penalber v. Blount, 550 So.2d 577, 583 (La. 1989). However, the 1996 amendments are merely declarative of existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. The burden is still on the mover first to show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Only after the mover has met this initial burden may summary judgment be rendered against *1192 an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim. La. C.C.P. art. 966 B and C. Once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the amended law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party. See McKey v. General Motors Corp., 96-0755 (La.App. 1st Cir. 2/14/97), 691 So.2d 164. Although La.C.C.P. art. 966 G states "notwithstanding any other provision of the Article to the contrary, the burden of proof shall remain with the mover," the effect of the amendment is that the non-moving party is no longer allowed to rely on the allegations of its pleadings in opposition to a properly supported motion for summary judgment. Tybussek v. Wong, 690 So.2d at 230.

ANALYSIS
Accordingly, our review begins with a determination, based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, of whether there exists a genuine issue of material fact regarding the logger defendants' liability in causing this accident. Plaintiffs' petition claims the logger defendants are liable based on the following alleged acts of negligence on the part of Mr. McDaniel:
a. Failing to keep a proper lookout;
b. Failing to properly maintain and inspect his vehicle and operating a vehicle which he knew or should have known was unsafe and dangerous;
c. Failing to comply with La.R.S. 32:382 and not displaying a red flag at rear of load to be clearly visible from at least 500 feet from the rear of the load;
d. Failing to comply with La.R.S. 32:383B(1) by not properly securing load to prevent any hazard to other users of the highway;
e. Displaying negligence by allowing logs from the load on his vehicle to wrongfully and dangerously extend into the other lane;
f. Failing to comply with Louisiana laws as they pertain to the negligent operation of a defective instrumentality;
g. Applying his brakes without warning to traffic in the rear of his intentions of exiting the roadway; and
h. Such other acts and omissions as will be shown at the time of the trial of this matter, all of which were in contravention of the exercise of due care, prudence, and the laws of the State of Louisiana and Parish of East Baton Rouge,....
In answer to the petition, the logger defendants denied the allegations listed above and filed a third party demand, asserting that the sole and proximate cause of the accident was the negligence of third party, Lakeitha Johnson, the driver of the vehicle in which plaintiffs were guest passengers. The logger defendants subsequently filed a motion for summary judgment. Introduced in support of the motion for summary judgment were the depositions of State Trooper Steve L. Dewey, Lakeitha Johnson, Louis McDaniel, Harold James Ivey, Sean David Ritchie, Carla Scott and Lawrence Kevin Scott.
At the outset, we note there were no eyewitnesses to this accident; even the drivers and passengers involved did not see and do not know how the accident happened. Therefore, the evidence from which to infer the facts surrounding this accident is purely circumstantial.
Lakeitha Johnson, the driver of the Sentra, testified that she and her three passengers left Baton Rouge to go to a casino in Natchez, Mississippi at approximately 2:00 AM on July 16, 1994. The sun was starting to rise at approximately 6:00 AM, when they left the casino to return home to Baton Rouge. According to Ms. Johnson, she did not have anything at all to drink from the time she got off of work, at approximately 11:00 the night before, until after the accident. She also testified that she did not see the accident take place, and that she does not remember how the accident happened. She further testified that she does not remember *1193 if she saw the log truck before the accident occurred and that she does not remember seeing any vehicles on the road within thirty seconds of the accident. According to Ms. Johnson, all she remembers is "being hit in the back and logs in the car," but she was unable to state which occurred first. She maintained that she was not tired or sleepy while driving home from the casino.
Lawrence Keith Scott, one of the plaintiffs in this action, testified that he was not asleep when the accident occurred, but he was lying on his wife's shoulder in the back seat with his eyes closed and he did not see the accident. According to Mr. Scott, the last thing he observed prior to lying down was a large white truck (the ice truck) passing the Sentra in the left-hand lane. (He never saw the log truck.) Mr. Scott testified that he then asked Ms. Johnson if she was alright to drive, to which she responded that she was fine. He then closed his eyes and attempted to fall asleep. According to Mr. Scott, the accident occurred "seconds" later.
Carla Scott, Mr. Scott's wife and the other plaintiff in this action, was asleep in the back seat prior to and at the time of the accident; Shannon Holmes, the front seat passenger fatally injured in the accident, was also asleep at the time of the accident.
Louis McDaniel, the driver of the log truck, did not see the accident and was not even aware that anything had impacted his truck until a short distance later when he observed smoke coming from the back of his vehicle. He pulled over and saw the Nissan Sentra for the first time, embedded in the rear wheelbase of his truck. Mr. McDaniel testified that the truck was loaded up the night of July 15, 1994. At approximately 7:00 AM the next morning, he left Centreville, Mississippi. A short while later, he exited Highway 68, saw no oncoming vehicles and made a left turn onto Highway 61, getting into the right southbound lane. Mr. McDaniel testified he was proceeding ahead, gaining speed, when he observed a white ice truck approaching from behind, in the left-hand lane. Moments later, Mr. McDaniel observed the smoke, which alerted him an accident had occurred.
Mr. Harold Ivey, the driver of the ice truck, testified that he was driving in the right southbound lane of Highway 61 when he observed a log truck ahead of him, "moving right along" in the same direction. Although the log truck appeared to be gaining speed, Mr. Ivey determined his speed was faster than the log truck, so he switched over into the left-hand lane. Prior to negotiating the lane change, he looked in his side-view mirrors. He observed a small red car a short distance behind him in the right-hand lane; there were no vehicles in the left lane. After getting into the left-hand lane, he looked again into his mirrors and observed the red car, still a short distance behind, in the right-hand lane. Mr. Ivey testified that he slowed his speed after changing lanes to make sure he could pass the log truck safely. When the front tires of the ice truck paralleled the rear tires of the log truck, Mr. Ivey heard what sounded like "a bat hitting a windshield" and "something hit the passenger door (of the ice truck)." He looked into his mirrors and observed the red car in the logs of the truck, being dragged and creating a lot of smoke. Mr. Ivey testified that the log truck remained in its lane of travel (the outside, right-hand lane) at all times. Mr. Ivey's passenger, Sean David Ritchie, corroborated Mr. Ivey's testimony regarding the location of the ice truck, in relation to the log truck, at the time of the accident.
State Trooper Steve L. Dewey investigated this accident and spoke with Ms. Johnson and Mr. McDaniel at the scene. According to Mr. Dewey, Ms. Johnson reported to him that she had been up all night at a casino in Mississippi. She also reported that a vehicle had struck her vehicle, pushing it into the log truck. Mr. McDaniel reported to him that he was proceeding straight ahead in his lane of travel; he observed a white truck approaching in the left lane, and then he observed smoke from behind and pulled his truck over.
Trooper Dewey found no physical evidence to substantiate the claim that Ms. Johnson's vehicle had been struck by another vehicle. Trooper Dewey estimated the point of impact on Highway 61, approximately three tenths of a mile from Highway 68, and concluded *1194 that the log truck was well into the right lane of Highway 61 at the time of impact, traveling at an estimated speed of 50 mph "or maybe a little slower." Based on the physical evidence at the scene of the accident, Trooper Dewey concluded that Ms. Johnson took no evasive action prior to impact. There was no indication of the Johnson vehicle braking or swerving to avoid impactno yaw marks, no skid marks. Based on the physical evidence and the statements of the drivers and passengers, Trooper Dewey concluded that both the log truck and the ice truck did "absolutely nothing" to cause this accident; rather the sole cause of the accident was "Ms. Johnson's falling asleep and driving her vehicle into the logs."
Relying on the foregoing evidence, the logger defendants maintain there are no genuine issues of material fact regarding the conduct of Mr. McDaniel in relation to this accident, and therefore, they are entitled to judgment as a matter of law. The trial court agreed with the logger defendants and granted summary judgment. Our de novo review of this matter leads us, inescapably, to the same conclusion.
Plaintiffs claim that McDaniel's admission that the flag on his load was not placed on the farthest protruding log establishes that he was operating the log truck in violation of La.R.S. 32:313, relative to the placement of lamps or flags on protruding loads. They also claim that McDaniel failed to use emergency flashers or any other warning to alert other drivers that he was traveling at a slower pace than ordinary traffic. Plaintiffs assert that these negligent acts by Mr. McDaniel created a sudden emergency which the Johnson vehicle could not avoid. Plaintiffs also argue that whether Ms. Johnson was asleep at the wheel at the time of the accident is a heavily disputed fact, in light of which summary judgment is improper. Finally, plaintiffs contend that the trial court improperly relied solely on the testimony of Trooper Dewey in granting summary judgment, when such testimony was directly contradicted by that of Kevin Scott.
We disagree on all counts. Arguably, the placement of the flag on McDaniel's log load was not in strict compliance with La.R.S. 32:313; this fact is somewhat disputed due to the poor quality of the photographs. However, regarding the cause of this accident, this fact is immaterial. There is nothing in the pleadings or depositions to suggest that the placement of the flag on the log truck had anything at all to do with this accident; based on the showing made, the accident would have taken place irrespective of any flags, lights or other warning signs placed on the log truck. The evidence establishes that Ms. Johnson never saw the log truck in front of her. Furthermore, we agree with plaintiffs that, based on the evidence presented, the fact of whether Ms. Johnson was asleep or awake at the time of the accident is still in dispute. However, the physical evidence established that there was absolutely no evasive action taken by Ms. Johnson. In light of this fact, it is immaterial whether Ms. Johnson was asleep or awake at the time of the collision. The fact remains that obviously, she was not keeping a proper lookout ahead prior to the collision. Whether this was due to inattentiveness on her part, or because she was asleep, tired or distracted is a fact that may never be ascertained. Nevertheless, plaintiffs have failed to show any genuine issue of material fact regarding liability on the part of the logger defendants. Finally, we disagree with the contention that the trial court relied solely on the testimony of Trooper Dewey and ignored the testimony of Kevin Scott, as asserted by appellants. The conclusions reached by Trooper Dewey were based on the statements of witnesses together with the physical evidence at the scene of the accident. The physical evidence revealed that the Johnson vehicle was not hit in the rear, as suggested by Mr. Scott and Ms. Johnson. The physical evidence also established that absolutely no evasive action was taken by Ms. Johnson; thus, again, Mr. Scott's testimony that the vehicle swerved prior to impact is wholly contradicted by the physical evidence. We find the trial court's conclusions were properly based on the totality of the evidence presented.
Accordingly, summary judgment, in favor of the logger defendants, dismissing plaintiffs' action against them, is proper. The *1195 judgment of the trial court is affirmed; plaintiffs are assessed costs for this appeal.
AFFIRMED.