857 So.2d 1060 (2003)
Gregory BOYD, Jr.
v.
Tracey Eady MORAN and the Fire & Casualty Insurance Company of Connecticut.
No. 2003-CA-0361.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2003.
*1061 H. Edward Sherman, Travis J. Causey, Jr., James E. Cazalot, Jr., New Orleans, LA, for Plaintiff/Appellant.
Edward J. Lassus, Jr., David J. Schexnaydre, Wade D. Rankin, Pajares & Schexnaydre, L.L.C., Covington, LA, for Defendant/Appellee, The Fire & Casualty Insurance Company of Connecticut.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge DAVID S. GORBATY).
JAMES F. McKAY III, Judge.
The plaintiff, Gregory Boyd, seeks a review of the trial court's judgment granting a partial summary judgment in favor of the defendant, The Fire & Casualty Insurance Company of Connecticut (F & CICC), and decreeing that any uninsured motorist (UM) coverage, whether statutory or contractual under the F & CICC policy, does not attach until the exhaustion of the self-insured retention (SIR) level of $100,000. The court further held that F & CICC is entitled to a credit against its UM coverage for workers' compensation benefits paid to the plaintiff by the New Orleans Sewerage and Water Board (S & WB).
On November 11, 1998, the plaintiff was a passenger in a S & WB vehicle, which was struck from the rear by a vehicle driven by Tracy Eady Moran. Ms. Moran was uninsured. As a result of the injuries Mr. Boyd sustained in the scope and course of his employment with the S & WB, he collected workers' compensation benefits and his medical expenses were paid. In a subsequent lawsuit, the plaintiff sued Ms. Moran as the tortfeasor and F & CICC as the UM provider for the S & WB in Policy No. ASR001199.[1]
The issue before this court is whether the SIR endorsement applies to a compensation *1062 claimant seeking UM benefits. Hence, only questions of law are before this Court as the facts germane to the motion for summary judgment are not in dispute. Therefore, this Court will review this matter de novo.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La. C.C. P. art. 966.
The interpretation of a statute is a question of law, which may be decided by summary judgment. Levy v. Vincent, 01-0277, (La.App. 3rd Cir.7/18/01), 796 So.2d 34, 36. In reviewing questions of law, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, (La.App. 1st Cir.8/21/96), 694 So.2d 316, 319.
ASSIGNMENT OF ERRORS
The plaintiff argues that the trial court erred in holding that the F & CICC UM policy does not attach until exhaustion of the SIR retention level of $100,000. He further argues that the trial court erred in granting F & CICC a credit against its UM motorist coverage for workers' compensation benefits paid by S & WB and/or its workers' compensation insurer, including indemnity and medical benefits paid to and/or on behalf of plaintiff arising out of the accident.
The defendant concedes that the policy in question, No. ASR001199, was purchased by authority of resolution R-129-98, adopted by the S & WB at its June 10, 1998, setting forth the intent of the S & WB to exclude UM coverage for the policy altogether. Nevertheless, the S & WB never endorsed the waiver on a form designated by the insurer, as required by law. F & CICC does not contest that the policy was therefore considered by law to have included UM coverage equal to the bodily injury limits. The defendant asserts that its insurance policy liability limits the UM coverage up to $1,000,000, which only exists in excess to the SIR amount which is $100,000; the $100,000, amount must be exhausted before the UM coverage is applicable.[2]
The trial court granted F & CICC's partial summary judgment decreeing that any UM coverage afforded by the policy "does not attach until exhaustion of the self-insured retention level of $100,000." The court further noted that F & CICC is entitled to credit against its UM coverage for workers' compensation benefits paid to the plaintiff by S & WB, including indemnity and medical expenses. The applicable statute for the UM coverage is found in La. R.S. 22: 1406(D).[3]
*1063 In the case sub judice the trial court granted the motion based on Tybussek v. Wong, 96-1981 (La.App. 4 Cir.1997), 690 So.2d 225, and ascertained that the S & WB was a self-insured entity that did not need to provide UM coverage to itself, albeit a self-insured entity was exempt from obtaining a formal certificate of self insurance as a political subdivision of the state. In Tybussek, the employee was an employee of the S & WB and was injured while occupying a vehicle owned by his employer. At the time of the accident the S & WB maintained insurance similar to that in the case at bar in that it was responsible for a SIR of $100,000. To cover the excess amount above the SIR, the S & WB purchased a policy with Carolina Casualty to provide $1,000,000 of liability coverage. The plaintiff in that case argued that the SIR limit set forth in the Carolina Casualty policy applied only to liability coverage and not the UM, which this Court rejected.
In Tybussek, we held that the S & WB was a self-insured entity that did not need to provide UM coverage to itself. Furthermore, pursuant to La. R.S. 32:1041, S & WB as a political subdivision of the state was exempt from obtaining a formal certification of self-insurance. The plaintiffs in Tybussek made a similar argument as Mr. Boyd does in this case, averring that the Carolina Casualty policy still provided coverage for damages within the SIR because there was no clear exclusion or waiver for that layer of liability. We stated in Tybussek that:
Plaintiffs argue that the policy does not contain "a clear and unmistakable exclusion" of UM coverage, thus requiring full coverage for UM benefits. What Plaintiffs fail to realize is that the Carolina Casualty Policy does, in fact, provide full UM coverage in the instant case.
Pursuant to the UM statute, La. R.S. 22:1406(d), every liability policy must *1064 contain UM benefits in the amount "not less than the limits of bodily injury liability provided by the policy" unless the insured validly rejects UM coverage or selects lower limits. Here, under the Carolina Casualty Policy, UM coverage was neither rejected nor lower limits selected for the type of vehicle involved in Plaintiff's accident. Rather, the policy was in full conformity with the statutory requirements that UM limits be in the amount "not less than the limits of bodily injury liability." That is, under the policy, the liability limits are $1,000,000 subject to the $100,000 SIR, and the UM limits are coextensive with the bodily injury coverage. Thus, "a clear and unmistakable exclusion" of UM coverage was unnecessary.
Id. at 230.
In the instant case there are no provisions in the F & CICC policy. That coverage is supplied solely by operation of law. We believe our decision in Tybussek correctly interpreted the law as requiring that UM limits be the same limits of liability coverage. In the case sub judice the limits are $1,000,000 in excess of the SIR limit which is $100,000.
Furthermore, under Louisiana law, even if the excess policy does not specifically provide UM coverage, the failure to secure a valid waiver or selection results in the default selection of UM limits equivalent to the liability coverage. If the liability coverage includes a SIR, the UM coverage will automatically include the same SIR even though the policy language is silent on the question. Trobaugh v. Migliore, 597 So.2d 494 (La.App. 1 Cir. 1992).
The F & CICC bodily limits are $1,000,000 excess of a $100,000 SIR. Hence, the UM limits are also $1,000,000 excess of a $100,000 SIR. In other words the insured is obligated to cover itself for the first layer of damages in the amount of $100,000. Therefore, even though the plaintiff may be barred from seeking the SIR portion of UM benefits directly from S & WB because of the exclusive remedy provisions of the workers' compensation law, the F & CICC's coverage will not attach until damages exceed the SIR.
Accordingly, we find no merit to this assignment of error and affirm the trial court's judgment on this issue.
Mr. Boyd also asserts that the trial court erred in granting F & CICC a credit against its UM motorist coverage for workers' compensation benefits paid by S & WB and/or its workers' compensation insurer, including indemnity and medical paid to and/or on behalf of plaintiff arising out of the accident.
In Molony v. U.S. Auto. Assoc., 683 So.2d 891 (La.App. 4th Cir.11/6/96), this Court held that UM carrier and the W/C carrier are solidarily liable for that obligation, the medical and wage benefit, paid by one exonerates the other. In essence the UM carrier is entitled to the credit. To do otherwise would be to allow Mr. Boyd to "double-dip" or make a double recovery by collecting UM benefits for damages that have already been compensated by his employer. We find no merit to Mr. Boyd's argument in this assignment of error. Therefore, we affirm the judgment of the trial court awarding a credit to F & CICC for the payments made pursuant to the workers' compensation laws.
For the above reasons, we find that the judgment of the trial court is consistent with the statutes and jurisprudence of this state. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] This policy is a commercial auto policy with the effective dates of June 20, 1998 to June 20, 1999 and provides $1,000,000 worth of primary UM coverage. Contained in this policy under the same number is a Self Insured Retention endorsement.
[2] The endorsement specifically states in pertinent part:

The limit of liability as stated in the policy declarations shall apply in excess of the retention as stated in this endorsement, and the Insured agrees to assume the retained limit of $100,000.00 per accident
[3] La. R.S.22:1406 (D) provides that:

Specific duties of casualty and surety division; uninsured motorist coverage; temporary substitute vehicles and rental vehicles.
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(1)(a)(ii) of this Subsection. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Subsection with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.